MEREDITH A. PHELAN AND ANOTHER v.
THERESA O. CAREY.[1]

May 10, 1946.

No. 34,094.

[1]Reported in 23 N. W. (2d) 10.

2

*Frank J. Collins* and *Mart M. Monaghan,* for appellant.
*Samuel Dolf* and *M. E. Culhane,* for respondents.

JULIUS J. OLSON, JUSTICE.

This was an action to enforce payment of a check for $500 issued and delivered by defendant to plaintiffs, payable to them as payees, or their order, on April 6, 1944. It was given in part payment of the purchase price of plaintiffs' home in Minneapolis. The deal, an oral one, was at the agreed price of $2,500, of which the check

constituted the down payment. Of the remaining $2,000, $600 in cash was to be paid on April 8 and $1,400 by defendant's assumption to pay that sum as the unpaid balance owed by plaintiffs under their contract of purchase from the owner. Defendant concedes that her defense is "want of consideration." She submits that there is only one question here for decision, namely: "Is an oral contract to sell land consideration for a check given *in part payment?*" (Italics supplied.) In her reply brief, defendant puts the issue this way:

"In any event there is but *one* point [in the case]. [Italics by defendant.] *That is the matter of consideration for the check given in payment of an oral contract for sale of land.* The question is whether such oral contract, violating the statute of frauds, is such consideration, * * *." (Italics supplied.)

When both parties rested, the court granted plaintiffs' motion for a directed verdict in their behalf. Judgment was entered pursuant thereto, and defendant appeals. There was no motion for a new trial.

■ The underlying purpose and primary object of a motion for new trial is to secure the correction of errors by the court having such matters directly in hand without the necessity of incurring the often heavy expense, the sometimes long delays, and the inconvenience of appeals to this court. 5 Dunnell, Dig. § 7073a; Chittenden v. German-American Bank, 27 Minn. 143, 6 N. W. 773.

■ When the trial is by jury, it is usually necessary to move for a new trial in order to question on appeal the sufficiency of the evidence to support the verdict. 5 Dunnell, Dig. & Supp. § 7073b, and cases under note 5.

■ In this case, however, the motion for a directed verdict directly presented the controlling issue in the case, *i. e.,* whether there was consideration for defendant's check. The trial court, by granting plaintiffs' motion, determined that issue as one of law, not of fact. In Ciresi v. Globe & Rutgers F. Ins. Co. 187 Minn. 145, 146, 147, 244 N. W. 688, 689, we had a similar problem to consider.

4

There, as here, there was no motion for a new trial. Our holding was that "on appeal from the judgment, we cannot consider any errors assigned which go only to the trial procedure, the introduction and exclusion of evidence, and the like." In that case, too, the motion for directed verdict "squarely presented" defendant's theory, and it "procured a ruling thereon" by the court. Therefore, we concluded, the "claim having been presented to" and ruling made "by the trial court, the point is open for consideration here even though there was no motion for new trial," citing cases.

The statute upon which defendant relies (Minn. St. 1941, § 513.05 [Mason St. 1927, § 8460]) provides:

"Every contract for the * * * sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the * * * sale is to be made, * * *."

Defendant's counsel, in his statement to the court after plaintiffs rested and in support of his motion to dismiss on the ground that the quoted statute stood firmly in plaintiffs' way, said: "* * * there can be no doubt as to the intention of these parties in this transaction, namely, the intention on the part of one to sell a house, and upon the other to buy it." Nor is there any dispute or doubt as to price, the terms, or the amount of the cash payment defendant was to make. As to that, defendant testified:

"A. Well, they figured they wanted to get as much down as they possibly could.

"Q. What did she say [referring to plaintiff Dorothy Phelan]?

"A. She said, 'I would like to get down as much as I can, as much cash as I can.' I said, 'Well, I can give you a check for $500.'

"Q. What did they say?

"A. She said, 'That will be fine.'

* * * * *

"Q. * * * What did you give them the check for $500 for?

"A. I suppose it would be part payment."

In respect to the sale price, defendant testified:

"Q. So that there may be no misunderstanding, the agreement that you had was, as the Phelans contend, the purchase price was to be $2,500?

"A. Right."

■ The record unmistakably discloses that when these parties were negotiating this sale there was competition between defendant and one Richard Williams, who offered to pay $2,700, that being the price placed upon the property in plaintiffs' sale advertisement. He had, however, much less cash to put into the deal than did defendant, and for that reason plaintiffs decided to accept her offer as more satisfactory to them than that proposed by Mr. Williams. Nor does defendant dispute the rule long established in this state, as restated in Holford v. Crowe, 136 Minn. 20, 23, 161 N. W. 213, 214:

"* * * in this state it is settled law that, if one party to a parol agreement, void under the statute, has paid money in performance thereof, such money cannot be recovered back by him when the other party to the agreement has not defaulted but stands ready, willing and able to perform according to the terms thereof." (Citing our prior cases.)

Examination discloses that this rule has been followed and applied in our subsequent cases. *Cf.* Haraldson v. Knutson, 142 Minn. 109, 171 N. W. 201; Welsh v. Estate of Welsh, 148 Minn. 235, 240, 181 N. W. 356, 358, 13 A. L. R. 267. In Oxborough v. St. Martin, 169 Minn. 72, 73, 210 N. W. 854, 49 A. L. R. 1115, we said:

"* * * It is not morally wrong to make or keep an oral agreement that falls within the statute of frauds, nor is there any statute which forbids entering such a contract."

We now come to the crucial question, *i. e.,* whether the check given in the circumstances here related operates to the same extent and accomplishes the same general purpose as if defendant had paid cash. It is interesting to note in this connection that defend-

ant had only $15 in cash with her when she made her bargain, and this sum she paid plaintiffs. Later and on the same day, she added $30 thereto, having borrowed this from a friend. In both instances, receipts were issued showing the respective payments and their general purpose. The next day, April 6, defendant again appeared on the scene, and then executed and delivered the $500 check presently involved, she having in the meantime made arrangements at her bank to have the money available there. The former receipts were then surrendered or destroyed.

Defendant's theory is that a check is merely " 'a means of obtaining the money', a *prima facie* 'evidence of a debt due' from defendant, * * * which is not the payment of money and which only becomes a payment of money when the cash is received on it."

■ The general rule approved by the weight of authority is stated in Annotation, 132 A. L. R. 1486:

"A purchaser who has given a promissory note or check representing the consideration of an oral contract cannot defeat an action on the note or check, upon the ground that the agreement is void or voidable under the statute of frauds, provided the party to whom it was given is ready, willing, and able to perform the parol agreement in accordance with its terms. In some jurisdictions, this appears to be the rule as to contracts for the purchase of realty, providing the vendee has been let into possession."

In support of the quoted annotation, the author cites numerous cases to sustain the text. We shall refer to only a few of them.

In Kinzie v. Harper, 15 Ont. L. 582, the facts were almost identical with those in the instant case. There, the parties made a definite oral bargain, clearly good except for the statute of frauds, for the sale of real estate. Defendant issued and delivered to plaintiff a check for part of the purchase price, but plaintiff remained in possession of the premises, and he neither made nor tendered a conveyance, but was willing and able to perform his promise to convey. The trial court rendered judgment for defendant, and plaintiff appealed. The judgment was reversed, because, said the court. (15 Ont. L. 584, 585) —

"* * * this is an action on the cheque, not on the oral contract.

\* \* \* \* \*

"* * * Here the cheque sued on was given in part payment and not to secure payment of damages or penalty for non-performance. * * * The plaintiff is able and willing to perform his contract. It is the defendant who refuses to perform, * * *."

In Little v. Dyer, 181 Minn. 487, 490, 233 N. W. 7, 9, we cited that case with approval, saying:

"* * * An almost parallel case, except that the contract to sell was oral, is Kinzie v. Harper, 15 Ont. L. Rep. 582, where the verbal agreement to sell was held a sufficient consideration for a check given as part payment."

To the same effect is Garbarino v. Union S. & L. Assn. 107 Colo. 140, 109 P. (2d) 638, 132 A. L. R. 1480, where the court held that a check given by an intending purchaser as earnest money on an oral contract for the sale of real estate is not void for want of consideration, so as to be unenforceable against the maker, because the contract of purchase was unenforceable against the seller, there being no written memorandum of the transaction so as to take the case out of the statute of frauds. In that case as in this, defendant contended that the oral contract was absolutely void under the Colorado statute and that therefore the check given by him to the plaintiff in the transaction was without consideration. The supreme court, in upholding the trial court, which had found for plaintiff, was of the opinion that (107 Colo. 147, 148, 109 P. (2d) 642, 132 A. L. R. 1485)—

"defendant is in the same position, legally, as if he was seeking to recover $1,000 paid on the purchase price, instead of resisting payment of the check given for such purpose."

The general rule to be applied in cases of this type is that where the vendor, under an oral agreement to sell land, is ready, willing, and able to perform, the purchaser's check or other negotiable instrument given in part payment of the purchase price constitutes adequate consideration and operates the same as if cash

had actually been paid. That is the rule in New York, as evidenced by the following cases: Fleischman v. Plock, 19 Misc. 649, 44 N. Y. S. 413; Murman v. Manning, 125 Misc. 830, 211 N. Y. S. 575. And in Schierman v. Beckett, 88 Ind. 52, 54, where the court held—

"that the defence to the note in such case [action on note given in part payment under an oral contract to sell land] must be, not upon the statute of frauds, but want or failure of consideration; which can not be made out if the vendor show his ability and willingness to perform."

Other cases upholding the enforcement of payment of checks or notes given in part payment of an oral contract for the sale of land hold that the action, being founded upon the check or note, is not basically founded upon the oral contract, but upon the agreement expressed in the negotiable instrument itself. For that reason, lack of consideration must be shown by the drawer or maker. If the vendor is ready, willing, and able to perform, then there is consideration, and the defense fails. Among these cases are the following: Schierman v. Beckett, 88 Ind. 52, *supra;* Edelin v. Clarkson's Executors, 42 Ky. 31, 38 Am. D. 177; Crutchfield v. Donathon, 49 Tex. 691, 30 Am. R. 112; Wilkinson v. Sweet (Tex. Civ. App.) 93 S. W. 702; Jones v. Jones, 6 Mees. & W. 84, 151 Eng. Reprint 331; 25 R. C. L., Statute of Frauds, § 335, and cases cited in notes.

In York v. Washburn (C. C.) 118 F. 316, the court had for consideration and decision a case where plaintiff, who had paid to defendant $10,000 as earnest money involving a long-time mining lease whereby large sums of money were to be paid in the future, brought suit to recover the payment because the contract was void under our statute of frauds. The court, however, was of opinion that (118 F. 317):

"* * * One who makes a partial payment of the consideration upon such a contract cannot recover it if the vendor is ready, willing, and able to perform on his part. No court has more firmly and clearly asserted this doctrine than the supreme court of Minnesota. [Citing our cases, including other cases.] The whole subject is

stated in a scholarly way by Prof. Keener in his work on Quasi Contracts (page 232 et seq.). The rule, at first thought, seems harsh, but consideration justifies its wisdom. The money is paid, to use the wise language of trade, 'to bind the bargain,'—a bargain recognized as without binding force in itself, by reason of the statute of frauds. To permit its recovery upon the mere plea of the statute would defeat the primary object of the parties. But the situation of the defendant is the best justification of the rule. His only remedy for the damages that he suffers by the plaintiff's repudiation of the oral agreement is to hold the earnest money. The statute forbids any recovery on the contract. To compel a restitution of the payment is to take from the defendant the very redress which he has wisely exacted, and which the plaintiff has voluntarily placed in his hands."

There are cases taking the opposite view. These are found in the annotation appearing in 132 A. L. R. 1488, 1489, and are limited apparently to cases from Kentucky and Alabama. These cases, however, are clearly in the minority class. Additional cases sustaining generally the text to which we adhere are found at p. 1490.

The judgment is affirmed.